UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENERATION NEXT FASHIONS LTD., <br><br> Plaintiff, <br><br> vs. <br><br> JP MORGAN CHASE BANK, NA., and SPORTLIFE BRANDS LLC <br><br> Defendants. | Civil No. <br><br> **VERIFIED COMPLAINT** <br> **and** <br> **JURY DEMAND** |

The plaintiff, Generation Next Fashions Ltd. ("Generation Next"), as and for their Complaint against defendants, JP Morgan Chase Bank, NA. ("JPM") and SportLife Brands LLC ("SportLife"), with knowledge as to their acts, and upon information and belief as to all others, state and allege as follows:

## INTRODUCTION

1. Generation Next is a public corporation of Bangladesh, with a primary place of business at Building # 348, Road # 05, DOHS Baridhara, Dhaka-1206, Bangladesh.

2. JPM is an American national bank which has a primary place of business located at 383 Madison Ave, New York, NY 10017.

3. SportLife is a New York limited liability company with a primary place of business located at 42 W 39th St, New York, NY 10018.

## JURISDICTION AND VENUE

4. Jurisdiction is appropriate pursuant to 28 U.S. Code § 1332, as there is complete diversity of citizenship between the plaintiff and the defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) and (2), since the defendants both are a substantial part of the events giving rise to the claim occurred in the State of New York.

## ALLEGATIONS COMMON FOR ALL COUNTS

6.     On March 21, 2020, Generation Next received emailed orders from a buying house/brokerage house in Bangladesh known as Specsavers which, at all pertinent times, was and is a disclosed agent of SportLife, and placed orders as vendor on behalf of SportLife for the manufacture of garments for defendant SportLife.

7.     Specsavers provided Generation Next with two sales contracts, drafted by Specsavers, being contract number SLB/SPECS/SP20/LOUNGT/20-01, dated July 17, 2020, for 128,448 pieces of readymade garments, totaling $276,589.44, and contract number SLB/SPECS/SP20/BASEA LAYER & LOUNGE/20-02, dated July 20, 2020, for 153,798 pieces of readymade garments, totaling $391,075.98 altogether for a total of $667,665.42.

8.     The shipment INCOTERM for the RMG goods was Freight on Board ("FOB") with 60 days deferred payment under Uniform Rules of Collection URC § 522.

9.     Pursuant to the agreements, goods delivered to the port in Bangladesh were released upon acceptance given by the collecting bank, JPM, with 60 days deferred payment; and upon maturity of the acceptance, payment was to be made by drawee, *i.e.* SportLife.

10.    Specsavers instructed Generation Next that certain suppliers of fabric and accessories must be used and that Generation Next had to open letters of credit (LCs) with such nominated fabric and accessories suppliers chosen by SportLife and make bank guaranteed payment, yet SportLife provided sales contracts which had payment terms providing sixty (60) days of deferred payment after document acceptance.

11. As such, Generation Next was compelled to open LCs totaling $425,964.68, and all such LC payments to the nominated suppliers were already paid by the expiration of the sixty (60) day payment deferral period.

12. Following the 60-day deferred payment period, Generation Next did not receive payment from SportLife. SportLife took goods of Generation Next directly and took foreign currency from Generation Next indirectly through LCs opened in favor of their nominated suppliers.

13. Generation Next imported raw materials for production of the readymade goods amounting to $600,411.98, of which $70,597.28 was paid, thus leaving Generation Next in significant debt for same.

14. All garments were inspected by Specsavers at the shipping terminal in Dhaka, Bangladesh, and were accepted without reservation. The duly inspected goods were handed over to the nominated freight forwarder "Seagold Limited", nominated by SportLife for shipment and the goods, which were timely shipped. Under the INCOTERM FOB, the SportLife's responsibility as the buyer started from the time when the goods were on board of the shipping vessel. SportLife became liable for payment of the goods once the goods were accepted through the nominated freight forwarder and loaded on board of shipping vessel.

15. One shipment occurred August 14, 2020; three other shipments occurred August 18, 2020; a fifth shipment was made August 25, 2020, and the final three shipments were made August 31, 2020.

16. JPM was the bank of the buyer SportLife as per the sales contracts. JPM was also introduced to be the collecting and presenting bank for Generation Next and Generation Next in good faith, accepted JPM to be its collecting bank. JPM upon taking the responsibility to act as the collecting bank became agent of Generation Next, and a fiduciary duty was undertaken by JPM as the agent of Generation Next to ensure and collect payment.

17. Between Generation Next and JPM, the Uniform Commercial Code of New York and URC § 522 both became applicable governing laws. As per URC § 522, Generation Next, through its reimbursing Bank in Dhaka, sent all documents to JPM and JPM on September 9, 2020, September 22, 2020, and November 19, 2020, gave acceptance to all documents with maturity dates for payment.

18. By virtue of being the presenting and collecting Bank, JPM was responsible for collection of all invoices due and owing from SportLife, and for remitting such sums owed to Generation Next via its banking agent in Bangladesh.

19. JPM was SportLife's bank when it became agent of Generation Next, as the presenting and collecting bank. Consequently, at all pertinent times, JPM was acting as a dual agent representing both the buyer and the seller's interest, which dual agency was not disclosed to Generation Next.

20. Following arrival of shipping title and commercial documents in New York, JPM released same to SportLife by obtaining acceptance from SportLife and gave maturity. The maturities expired and bills became due.

21. At such time, Generation Next's bank in Bangladesh issued payment demand on October 21, 2020. However, JPM did not release payment or advise the remitting bank as to non-payment and sought no instruction, as required by Article 26 of URC §522, and instead remained maliciously silent.

22. A second payment demand was sent by Generation Next's bank in Bangladesh February 11, 2020, and a third payment demand was made on November 24, 2020, none of which received a reply from JPM.

23. At all such times, by remaining silent, JPM protected the interests of its customer, SportLife to the detriment of Generation Next, to which it owed fiduciary and other duties.

24. In so doing, JPM violated Article 4-103(1) of UCC by failing to act whit ordinary care, and violated Article 9 of URC § 522 by failing to show reasonable care.

25. On December 1, 2020, JPM sent swift messages and asked Generation Next to contact Sportlife for payment.

26. JPM is strictly liable pursuant to Article 26 of URC § 522 to advise non-payment without delay, and to seek appropriate instruction from the remitting bank.

27. In failing to act in any manner to protect Generation Next's interests, JPM acted maliciously and wantonly for the purpose of protecting the interest of SportLife over those of Generation Next.

28. Generation Next was helpless before the collusive and malicious actions of SportLife and JPM, and no option to contact SportLife, which then, most unlawfully sought discount of 8% even though under INCOTERM "FOB" the buyer is responsible for whole payment once goods are free on board. Here SportLife not only inspected, accepted, and instructed shipment of the goods, but also released the same by using documents endorsed by JPM, such that SportLife has no legal entitlement to a discount.

29. Despite same, SportLife sought a sudden and unlawful discount, which was admitted by its own agent, Specsavers, in emails dated December 23, 2020; December 28, 2020, yet in emails dated November 10, 2020 and November 11, 2020, Specsavers acknowledged that SportLife is sorry for the delay due to short sales, and would make full payment shortly.

30. Under duress and malicious undue influence, Generation Next conceded to the unlawful demand and by mail, dated December 29, 2020, agreed to the discount sought.

31. Still, JPM maliciously failed to release payment and, after wasting around 20 days, on January 17, 2020, sent a Swift message with a purported second maturity date it sought to impose of January 25, 2021. In such Swift message, JPM wrote that "as per enclosed signed agreement between SportLife and Specsavers, the agent of Generation Next, discounted amount with new maturity date is being given."

5

32. JPM's Swift message was knowingly false, since (1) Specsavers was known to be SportLife's agent; and (2) no written agreement was signed by Generation Next giving a further discount to SportLife

33. In so acting, JPM was interfering with Generation Next's known contracts and economic benefits; it did so while being a fiduciary to Generation Next; it did so while being an disclosed dual agent of Generation Next and Sport Life; it did so with intent to defraud Generation Next; it do so with actual malice since it knew there was no such agreement or, if one did exist, it either was forged or was *ultra vires* in terms of authority from Generation Next; it was done in bad faith; and it was done without objection by JPM, which was acting as the collecting bank.

34. Generation Next, in good faith, did not raise any objection as it already had accepted the discount. Had it been fully informed of the actual facts, Generation Next never would have accepted such discount, such that it was actually damaged by its reasonable reliance on JPM's fraud, and that of SportLife.

35. Upon information and belief, SportLife was a banking customer of JPM, and JPM acted in Sport Life's favor despite the duties it owed to Generation Next as a way to protect its banking relationship with SportLife and, upon information and belief, its officers, directors, employees, agents, and/or other associated individuals and entities.

36. Despite the fraudulently obtained new maturity date, no payment was made on January 20, 2021. Prior thereto, JPM did nothing to protect Generation Next's interests in receiving payment; and JPM took no substantial and/or reasonable actions thereafter to seek to collect payment from SportLife.

37. In March 2021, SportLife offered to provide a new schedule of payment which Generation Next outright denied. Even Specsavers denied the new proposal of schedule via its email dated March 18, 2020.

38. Further, the remitting bank in Bangladesh, SEBL, sent a fourth payment demand on March 24, 2021. JPM thereafter again acted with actual malice and without reasonable care in not taking action to effectuate collection, in violation of UCC New York and URC § 522.

39. After 3 months, on June 20, 2021, SEBL again sent a payment demand to JPM for payment. The next day, JPM replied that a new payment schedule is being reviewed as per an alleged enclosed agreement. JPM did not enclose any such agreement and, thus, knowingly acted with in a malicious manner to harm Generation Next in favor of SportLife, nor did JPM endeavor to ascertain the reasons for non-payment as per article 26(1) of URC §522, which further demonstrates actual malice and a failure to act with reasonable care.

40. Generation Next thereafter unambiguously denied any new payment schedule and demanded immediate payment, but to no avail. By such time, Generation Next became aware of the collusion between JPM and SportLife, such that JPM's violation of its fiduciary duties to Generation Next had finally come to light.

41. On August 3, 2021, Generation Next, through SEBL, sought a copy of the alleged agreement to which JPM at least twice referred, but never provided, which purportedly altered payment terms.

42. JPM continues to act with actual malice and without reasonable care in that it has made no effort to provide the purported "agreement" which, if not altogether fictitious, was known by JPM to have been a forgery and/or to have been *ultra vires*.

43. Rather than providing the purported agreement as had been demanded of it, On August 23, 2021, JPM sent new purported maturity dates which contained discounts for SportLife. Such acts constitute conspicuous evidence that JPM has and continues to act with actual malice toward Generation Next.

44. By swift message dated September 28, 2021, Generation Next vehemently denied new maturity dates and sought payment. JPM has not replied as of the filing of this Verified Complaint. Generation Next has been substantially damaged by virtue of defendants' actions.

## FIRST COUNT
### (Breach of Contract-JPM)

45. The plaintiff repeats and realleges each and every allegation above, as if it is set forth herein at length.

46. Pursuant to the parties' agreements, JPM was bound under UCC New York and URC 522 as the presenting and collecting bank to collect payment, to endeavor to ascertain the reason for non-payment, and without delay to advise about the non-payment, all of which duties were breached.

47. Generation Next has been damaged by JPM's failure to fulfill its contractual duties, which failures have caused Generation Next, to suffer actual and consequential damages.

WHEREFORE, the plaintiff Generation Next seeks Judgment against defendant JPM, as follows:

A. Compensatory damages;

B. Consequential damages;

C. Interest as allowed by law;

D. All costs of suit, including reasonable attorneys' fees and costs;

E. Such other and further relief as this Court deems equitable and just.

## SECOND COUNT
### (Breach of Fiduciary Duty with Actual Malice-JPM)

48. The plaintiff repeats and reasserts each and every allegation above, as if fully set forth herein at length.

49. JPM acted as collecting agent for Generation Next and, thus, owed Generation Next fiduciary responsibilities in such capacity.

50. As a fiduciary to Generation Next, JPM was obligated to give full and fair disclosure to Generation Next that it was conflicted in such duties with respect to its dual agency relationship with SportLife, and with respect to any banking and/or other business relationship with SportLife which may adversely impact its ability to serve in a fiduciary capacity to Generation Next.

51. JPM acted with actual malice to protect its relationship with SportLife to the detriment and damage of Generation Next, which reasonably expected that its fiduciary agent, JPM, would act in keeping with its obligations to Generation Next to be bound under UCC New York and URC § 522 as the collecting bank to collect payment, to endeavor to ascertain the reason for non-payment, and without delay.

52. JPM was bound under UCC New York and URC 522, as the presenting and collecting bank, to collect payment, to endeavor to ascertain the reason for non-payment and without delay advise about the non-payment all of which duties were avoided with actual malice by JPM supporting the interest of its own customer SportLife.

53. Since SportLife has account with JPM, and since JPM undertook the responsibility of being the collecting bank for Generation Next, after SportLife gave acceptance and maturity expired, JPM was obligated to fulfill its fiduciary duty owed to Generation Next by creating a guaranteed payment mechanism, but JPM did the opposite and maliciously assisted its customer SportLife to evade payment.

54. Pursuant to UCC New York and URC § 522, JPM's breach of its fiduciary duty renders it liable to Generation Next for all damages it has suffered.

55. Demand has been made of JPM for payment, which has not been forthcoming, such that the plaintiff, Generation Next, continues to suffer actual and consequential damages related to JPM's breach of fiduciary duty.

WHEREFORE, the plaintiff Generation Next seeks Judgment against defendant JPM, as follows:

    A    Compensatory Damages;

    B.    Consequential Damages;

    C.    Punitive Damages;

    D.    Interest as allowed by law;

    E.    All costs of suit, including reasonable attorneys' fees and expert costs;

    F.    Such other and further relief as this Court deems equitable and just.

### THIRD COUNT
### (Conversion-JPM)

56. The plaintiff repeats and reasserts each and every allegation above as if fully set forth herein at length.

57. Generation Next had possessory right to the title documents and/or garments which were the subject of its agreements with defendant SportLife.

58. JPM received such title documents and/or garments as the plaintiff's collection agent for collecting payment in a timely manner from defendant SportLife.

59. Rather than act in a manner to ensure collection, JPM converted the documents and/or garments to itself as agent of SportLife, and transferred such documents to SportLife without taking actions in support of its role as collection agent for Generation Next.

60. JPM acted knowingly and with actual malice when so converting said documents to itself for transfer to SportLife in derogation of Generation Next's right.

WHEREFORE, the plaintiff Generation Next seeks Judgment against defendant JPM, as follows:

A. Compensatory damages;

B. Consequential damages;

C. Punitive damages;

D. Interest as allowed by law;

E. All costs of suit, including reasonable attorneys' fees and expert costs;

F. Such other and further relief as this Court deems equitable and just.

### FOURTH COUNT
### (Negligence--JPM)

61. The plaintiff repeats and reasserts each and every allegation above as if fully set forth herein at length.

62. Defendant JPM owed Generation Next a duty of ordinary care under UCC New York, and reasonable care under URC § 522, in collecting the payment owed to Generation Next, advising of non-payment without delay, and endeavoring to ascertain reason for non-payment.

63. JPM breached such duties of reasonable and/or ordinary care, resulting in reasonably foreseeable damages being caused to Generation Next, thus causing it damage.

WHEREFORE, the plaintiff Generation Next seeks Judgment against JPM, as follows:

A. Compensatory damages;

B. Consequential damages;

C. Interest as allowed by law;

D. All costs of suit, including reasonable attorneys' fees and costs;

E. Such other and further relief as this Court deems equitable and just.

**FIFTH COUNT**
**(Tortious Interference with Contract -JPM)**

64. The plaintiff repeats and reasserts each and every allegation above, as if fully set forth herein at length.

65. Defendant JPM knew of Generation Next's

66. JPM had a duty of good faith and fair dealing, express and/or implied, in the performance of its contract.

67. Upon information and believe, defendant JPM and defendant SportLife had, or desired, an ongoing banking relationship with one another which had, or was intended to be, profitable and/or lucrative for one or both.

68. In transferring title documents to defendant SportLife without receipt of payment, defendant JPM sought to prevent the performance of the contract in the manner contemplated by the parties so as to withhold the benefits of the contract from Generation Next, in favor of providing defendant SportLife with enhanced benefits under its contract with Generation Next.

69. Defendant JPM's conduct in such regard was akin to a fraud, evincing a high degree of moral turpitude, and demonstrating such wanton dishonesty as to imply a knowingly indifferent to its civil obligations.

70. As Defendant JPM is highly regulated in the public interest, its conduct as aforesaid, such that its conduct in such regard was aimed both at Generation Next, and at the public generally.

WHEREFORE, the plaintiff Generation Next seeks Judgment against defendant JPM, as follows:

    A. Compensatory damages;

    B. Punitive Damages;

    C. Consequential damages;

D. Interest as allowed by law;

E. All costs of suit, including reasonable attorneys' fees and costs;

F. Such other and further relief as this Court deems equitable and just.

### SIXTH COUNT
### (Bailment--JPM)

71. The plaintiff repeats and reasserts each and every allegation above, as if fully set forth herein at length.

72. Defendant JPM took actual possession of title documents, which gave it constructive possession over the garments shipped by Generation Next, pursuant to its agreements with defendant SportLife.

73. Generation Next was entitled to possession of such title documents and goods in the absence of payment and/or guarantee of payment to defendant JPM by defendant SportLife.

74. At the time it received such documents, defendant JPM obtained possession of such documents without the intent to appropriate same.

75. While in possession, custody, and control of such documents, defendant JPM acted so as to deprive Generation Next's dominion, rights, and possession thereto, thus causing it damage.

WHEREFORE, the plaintiff Generation Next seeks Judgment against defendant JPM, as follows:

A. Compensatory damages;

B. Punitive Damages;

C. Consequential damages;

D. Interest as allowed by law;

E. All costs of suit, including reasonable attorneys' fees and costs;

F. Such other and further relief as this Court deems equitable and just.

**SEVENTH COUNT**
**(Breach of Contract-SportLife)**

76. The plaintiffs repeat and reassert each and every allegation above, as if fully set forth herein at length.

77. Defendant SportLife entered a contract with Generation Next with INCOTERM "FOB" meaning buyer is liable to make full payment once the goods are free on board of the shipping vessel.

78. Pursuant to its contract with Generation Next, defendant SportLife was obligated to pay $667,665.42 to Generation Next under INCOTERM, common law and/or pursuant to NYUCC 2-101 *et seq*.

79. Despite due demand for same, defendant SportLife has failed to make payment of any such amount due, thus causing Generation Next damage.

WHEREFORE, the plaintiff Generation Next seeks Judgment against defendant SportLife, as follows:

A. Compensatory damages;

B. Consequential damages;

C. Interest as allowed by law;

D. All costs of suit, including reasonable attorneys' fees and costs;

E. Such other and further relief as this Court deems equitable and just.

**EIGHTH COUNT**
**(Conversion-SportLife)**

80. The plaintiff repeats and reasserts each and every allegation above, as if fully set forth herein at length.

81. The plaintiff had possessory right to the title documents and/or garments which were the subject of its contract with defendant SportLife.

14

82. In exercising dominion and control over such documents without obtaining payment or otherwise arranging to guarantee payment in a timely manner, defendant SportLife converted said title documents and/or garments in derogation of the plaintiff's rights, thus causing it damage.

83. Said conversion was knowingly made with intent not to pay such that it was purposeful and intentionally malicious and damaging to Generation Next.

WHEREFORE, the plaintiff Generation Next seeks Judgment against defendant SportLife, as follows:

A. Compensatory damages;

B. Consequential damages;

C. Punitive damages;

D. Interest as allowed by law;

E. All costs of suit, including reasonable attorneys' fees and costs;

F. Such other and further relief as this Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand a trial by a jury of twelve persons on all counts so triable.

Respectfully submitted,

**WEINER LAW GROUP LLP**

By: *Ronald A. Berutti*
Ronald A. Berutti
A Member of the Firm
90 Broad Street
Suite 1802
New York, New York 10004
(646) 273-2627
rberutti@weiner.law

Dated:  November 9, 2021

## **ATTORNEY VERIFICATION**

Ronald A. Berutti, an attorney duly admitted to practice law before this Court, affirms to the truth of the following under penalty of perjury and pursuant to CPLR §2106:

I am a partner of Weiner Law Group LLP, attorneys for the plaintiff in the within action. I have read the foregoing Complaint and know the foregoing contents thereof. The allegations contained therein are true to your affirmant's own knowledge, except as to the matters alleged on information and belief, and as to those matters your affirmant believes them to be true. The reason this affirmation is made by the undersigned and not by plaintiff is that the plaintiff resides outside of the county where your affirmant's law firm is located. The grounds for your affirmant's belief as to all matters not stated to be upon your affirmant's knowledge, are as follows: records, correspondence, investigation and other documentation in the possession of the undersigned.

Dated:  New York, New York
        November 9, 2021

WEINER LAW GROUP LLP

By:  *Ronald A. Berutti*
     _____
     Ronald A. Berutti
     A Member of the Firm
     Attorney for Plaintiffs
     90 Broad Street, Suite 1800
     New York, New York 10004
     646-273-0275

2196291_1